UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **NANETTE BARNES DIEL** | * | **CIVIL ACTION NO.  09-1350** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

### Background & Procedural History

Nanette Barnes Diel filed the instant application for Title II Disability Insurance Benefits on June 27, 2005. *See* Tr. 65-67, 94. She alleged disability since January 1, 1999, because of post-hyperparathyroidism, osteoporosis, osteoarthritis, rheumatoid arthritis, fibromyalgia, arthritis, migraines, narcolepsy, spinal disc stenosis, high blood pressure, anxiety, depression, fatigue, joint pain, and fractured bones. (Tr. 97-98). The claim was denied at the initial stage of the administrative process. (Tr. 46-51). Thereafter, Diel requested and received a June 15, 2006, hearing and two supplemental hearings on March 16 and May 11, 2007, before an Administrative Law Judge ("ALJ"). (Tr. 777-820). However, in a September 27, 2007, written decision, the ALJ determined that Diel was not disabled under the Act, finding at Step Four of the sequential

evaluation process that she could return to her past relevant work as a receptionist/office aide. (Tr. 14-26). Diel appealed the adverse decision to the Appeals Council. On June 11, 2009, however, the Appeals Council denied Diel's request for review; thus the ALJ's decision became the final decision of the Commissioner. (Tr. 6-8).

On August 3, 2009, Diel sought review before this court. She alleges the following errors,

(1) the ALJ erred in failing to find that her impairments medically equaled Listing § 1.04A in 20 C.F.R. Part 404, Subpart P, Appendix 1; and

(2) the ALJ committed reversible error by failing to consider all of the evidence.

### **Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

  (5)  If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See, Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

  The court observes that Diel remained insured for purposes of her Title II claim only through March 31, 2004. *See* Tr. 17. Thus, the relevant period extends from January 1, 1999, – her alleged disability onset date, through March 31, 2004, – the date that she was last insured.

**I.**  **Steps One and Two**

  The ALJ determined at Step One of the sequential evaluation process that Diel did not engage in substantial gainful activity during the relevant period. (Tr. 19). At Step Two, he found that she suffers a severe impairment of spondylosis, with degenerative disc disease. *Id*.

**II.**  **Step Three**

  At Step Three, the ALJ concluded that Diel's impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at Step Three of the process. (Tr. 22).

Plaintiff contends that her impairment(s) is medically equivalent to the listing for disorders of the spine. The relevant section provides,

> 1.04. Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
>> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); . . .

20 C.F.R. Subpart P, App. 1, Section 1.04A.

To establish that a claimant's injuries meet or medically equal a listing, the claimant must provide medical findings that support all of the criteria for a listed impairment (or most similarly listed impairment). *See Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). An impairment that manifests only some of the requisite criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 891 (1990). If the plaintiff fails to demonstrate the specified medical criteria, the court will find that substantial evidence supports the ALJ's finding that listings-level impairments are not present. *Selders*, 914 F.2d at 620.

Under the regulations, an impairment(s) is medically equivalent to a listed impairment "if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a). Medical equivalence may be established in three ways:

> (1)(I) If you have an impairment that is described in appendix 1, but--
>
>> (A) You do not exhibit one or more of the findings specified in the particular listing, or
>>
>> (B) You exhibit all of the findings, but one or more of the findings is not as severe as specified in the particular listing,

> (ii) We will find that your impairment is medically equivalent to that listing if you have other findings related to your impairment that are at least of equal medical significance to the required criteria.
>
> (2) If you have an impairment(s) that is not described in appendix 1, we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairment(s) are at least of equal medical significance to those of a listed impairment, we will find that your impairment(s) is medically equivalent to the analogous listing.
>
> (3) If you have a combination of impairments, no one of which meets a listing (see § 404.1525(c)(3)), we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairments are at least of equal medical significance to those of a listed impairment, we will find that your combination of impairments is medically equivalent to that listing.
>
> (4) Section 404.1529(d)(3) explains how we consider your symptoms, such as pain, when we make findings about medical equivalence.

20 C.F.R. § 404.1526(b).

When determining whether an impairment medically equals a listing, the Commissioner considers all relevant evidence in the record. 20 C.F.R. § 404.1526(c). The Commissioner also considers the opinion of a medical consultant who is engaged by the Commissioner to make medical judgments in Social Security matters. 20 C.F.R. § 404.1526(c).

In this case, the ALJ grounded his decision on the responses to written interrogatories that the ALJ sent to medical consultant, Frank L. Barnes, M.D., a board certified orthopedic surgeon. (Tr. 521-526). Plaintiff contends that Dr. Barnes' opinion is unreliable because he premised his opinion that her impairment(s) did not equal Listing 1.04A upon a lack of "consistent findings of neurologic loss," and because her combined impairments would not preclude work. *See* Tr. 523-524. Plaintiff seems to suggest that Dr. Barnes impermissibly imposed a persistence of symptoms requirement to the Step Three inquiry. The regulations specify, however, that "[m]usculoskeletal impairments frequently improve with time or respond to treatment.

Therefore, a longitudinal clinical record is generally important for the assessment of severity and expected duration of an impairment unless the claim can be decided favorably on the basis of the current evidence." 20 C.F.R. Subpart P, App. 1, Section 1.00H(1).  In other words, where the record is equivocal and the severity of plaintiff's impairment(s) waxes and wanes, a determination must be made whether plaintiff's symptoms are of listing level severity.

In this case, the ALJ employed the services of a medical consultant to review the medical record and to issue opinions regarding the requisite medical findings of the sequential evaluation process.  Dr. Barnes reviewed the record and opined that Diel's neurologic symptoms did not sufficiently meet or equal the most applicable listing.  His opinion is supported by substantial evidence.  For example, on August 17, 2001, Diel reported minimal back discomfort.  (Tr. 303).  Upon examination, she could toe and heel walk.  *Id*.  Despite a positive sciatic tension test, she remained otherwise neurologically intact.  *Id*.  She was diagnosed with radiculopathy of the left, lower extremity.  *Id*.  On September 4, 2001, Diel had a negative straight leg test.  (Tr. 334-337).  On October 22, 2001, she reported feeling a lot better following lumbar epidural steroid injections.  (Tr. 328-329).  At that time, she reported no left foot or leg pain.  *Id*.  Although she experienced some lower extremity numbness, it was mild and tolerable.  *Id*.  She complained of isolated constant low back pain, but without radiation into the legs.  *Id*.  Her gait was essentially normal. *Id*.  Furthermore, Vincent Forte, M.D.'s notes from July 8, 2005, indicate that she was last seen by Dr. Ellis at Pain Management in January 16, 2002.  (Tr. 273-276).  Diel reported that she had experienced an exacerbation of her lower back and right leg pain since her surgery in *2005*.  *Id*.  Forte noted that the herniation at L4 was possibly larger from the previous study done in 2001.  *Id*.

As mentioned above, plaintiff also contends that Dr. Barnes impermissibly supported his

equivalence opinion by noting that plaintiff's combined impairments would not preclude work. While a claimant's residual functional capacity to engage in substantial gainful activity is not dispositive of the Step Three inquiry,[1] the listings nonetheless represent impairments that the Commissioner deems severe enough to prevent an individual from performing any gainful activity, regardless of the individual's vocational background. 20 C.F.R. § 404.1525(a). Moreover, an individual whose impairment(s) meets or equals a listed impairment is presumed unable to work. *Sullivan*, 493 U.S. at 532, 110 S.Ct. at 892. Thus, a claimant's ability to work may provide a useful shorthand gauge to measure the severity of a claimant's impairments for purposes of medical equivalence.

Finally, plaintiff argues that Dr. Barnes' opinion is undermined by his failure to consider her numerous stress fractures and bone fusion. While plaintiff clearly suffered numerous stress fractures and underwent a bone fusion, there is substantial record evidence that she did not suffer these impairments during the relevant period. For instance, by February 19, 1999, Diel reported that her pain was markedly improved and that she only occasionally experienced bone pain. (Tr. 250). Physician's notes from April 23, 1999, state that her bone scan was fine. (Tr. 249). At the hearing, plaintiff could not recall whether, or how many foot fractures she had sustained between 1999 and 2004. (Tr. 806-807). In any event, the fractures healed in six months or so. *Id*.[2] Furthermore, Diel did not undergo her left foot fusion until April 18, 2005. (Tr. 253).

In sum, Dr. Barnes' opinion provides substantial evidence to support the ALJ's determination that Diel's impairments did not meet or otherwise medically equal a listing.

---

[1] *See* 20 C.F.R. Subpart P, App. 1, Section 1.00H(4).

[2] Barnes stated that he did not consider Diel's foot problems because foot fractures typically heal in only six to eight weeks, – well under the requisite 12 month period. (Tr. 804).

8

**III.     Residual Functional Capacity**

The ALJ next determined that Diel retained the residual functional capacity to perform light work,[3] with an ability to push/pull only 20 pounds with the upper extremities. (Tr. 23). Her postural activities were also limited to an occasional frequency. (Tr. 23).

The ALJ's residual functional capacity assessment is substantially supported by the medical source statement completed by Dr. Barnes. (Tr. 527-530).[4] On the other hand, plaintiff emphasizes a June 7, 2006, letter from one of her treating physicians, Vincent Forte, M.D., in which he recited her medical history and endorsed her inability to return to full or part-time work. (Tr. 310). He stated that the combined impact of her medical impairments would prevent her from even minimal sedentary work. *Id*. Plaintiff contends that the ALJ erred not only because he failed to resolve this inconsistency in the evidence, but also because he did not even acknowledge Dr. Forte's letter. While an ALJ certainly is obliged to consider all of the record

---

[3] Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

[4] Upon cross-examination, Dr. Barnes conceded that it was *possible* that plaintiff's impairments would limit her ability to walk and stand. *See* Tr. 801, 804. However, there is no indication that he retracted his prior opinion that her impairments did not affect her ability to stand and/or walk. Moreover, light work only requires the ability to stand and/or walk for six hours in an eight hour day.

evidence,[5] he need not discuss every piece of evidence in the record. *Bordelon v. Shalala*, 1994 WL 684574 (5th Cir. Nov. 15, 1994) (unpubl.). Moreover, the instant ALJ acknowledged that he reviewed all of the evidence. (Tr. 17); *See Daniels v. Apfel*, 1999 WL 346976 (5th Cir. May 20, 1999) (unpubl.) (ALJ's failure to discuss expert opinion testimony did not constitute error because he stated that he considered the entire record).

In any event, a physician's statement that a claimant is disabled or unable to work is accorded no special significance. 20 C.F.R. § 404.1527(e)(1); *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003). In addition, the probative force of Dr. Forte's statement that he thought the "combined impact" of Diel's impairments would keep her from even sedentary work, is rendered impotent by the fact that he, personally, did not treat her until *after* the relevant period, *see* Tr. 273, and at a point when Diel had begun to suffer from other impairments. Thus, the ALJ's failure to address Dr. Forte's letter was harmless. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (procedural perfection in administrative proceedings is not required); *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (ALJ's omission does not require remand unless it affected claimant's substantial rights).

**IV.    Step Four**

At Step Four of the sequential evaluation process, the ALJ employed a vocational expert to find that Diel was able to return to her past relevant work as a receptionist/office aide. (Tr. 25). Other than implicating the ALJ's residual functional capacity assessment, plaintiff does not raise any challenges specific to the ALJ's Step Four analysis.

**Conclusion**

The ALJ in this case was tasked with determining whether plaintiff was disabled as of

---

[5] *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).

March 31, 2004.  In so doing, he considered the medical record and consulted a medical expert. The evidence was not uniform and could have supported a different outcome.[6]  However, the ALJ ultimately grounded his decision upon the opinion of the medical consultant.  Such conflicts in the evidence are for the Commissioner to resolve.  *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citation omitted); *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971) (citation omitted).  This court may not "reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (citations and internal quotation marks omitted).

For the foregoing reasons, the undersigned finds that the Commissioner's determination that Diel was not disabled under the Social Security Act is supported by substantial evidence and remains free of legal error.  Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision to deny disability benefits be **AFFIRMED**, and that this civil action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED**

---

[6] It is manifest that plaintiff suffered a marked deterioration in her condition after the relevant period.

**FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 30th day of July 2010.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE